**In re INSLAW, INC., Debtor.**

**INSLAW, INC., Plaintiff,**

**v.**

**UNITED STATES of America and the United States Department of Justice, Defendants.**

**Bankruptcy No. 85–00070.
Adv. No. 86–0069.**

United States Bankruptcy Court, District of Columbia.

July 20, 1987.

Findings of Fact Jan. 25, 1988.

Final Judgment Order Jan. 25, 1988.

Final Judgment Order
(Counts I, II and III) Jan. 25, 1988.

Final Judgment Order
(Count IV) Feb. 2, 1988.

Final Judgment Order
(Attorneys' Fees) Feb. 6, 1988.

See also, Bkrtcy., 83 B.R. 89.

Charles R. Work, M.E. Friedlander, Philip L. Kellogg, Seth Greenstein, Washington, D.C., for debtor.

Dean S. Cooper, Lauren Bloom, Sandra Spooner, J. Christopher Kohn, Washington, D.C., for the U.S. and the U.S. Dept. of Justice.

## ORDER

GEORGE F. BASON, Jr., Bankruptcy Judge.

Upon consideration of INSLAW Inc.'s motion for court assistance to obtain independent handling; the opposition thereto of respondents United States of America and the United States Department of Justice; the testimony of witnesses and other evidence presented during the hearing held May 29 and June 1, 2 and 3, 1987; and the Court having found by clear and convincing evidence that, subsequent to the filing by INSLAW on February 7, 1985, of a petition under Chapter 11 of the bankruptcy laws, the United States Department of Justice, acting through its employees, unlawfully, intentionally and willfully sought to cause the conversion of the petition to a Chapter 7 liquidation without justification and by improper means, and for the reasons set forth by the Court in its oral ruling on the motion on June 12, 1987, and on the basis of written findings of fact and conclusions of law consistent therewith to be entered by the Court in due course, it is hereby

ORDERED that judgment be and hereby is entered in favor of INSLAW, Inc. and against respondents United States of America and the United States Department of Justice for compensatory damages in the amount of one thousand ($1,000) dollars, together with INSLAW, Inc.'s attorney's fees and expenses incurred as a result of respondents' wrongful conduct and in connection with the prosecution of this motion, pursuant to 11 U.S.C. § 362(h); and it is

FURTHER ORDERED that the United States Department of Justice and the Executive Office of United States Trustees and their respective employees are hereby enjoined from making contacts of any kind with the Office of the United States Trustee for the District of Columbia and the Eastern District of Virginia relating to the INSLAW, Inc. bankruptcy, other than simple requests for information; and it is

FURTHER ORDERED that the United States Trustee for the District of Columbia and the Eastern District of Virginia shall promptly report in writing to the Court, to counsel for the Debtor INSLAW, Inc. and to counsel for the unsecured creditors committee, the fact and the substance of any contact received from any person employed by or associated with the United States Department of Justice or the Executive Office of United States Trustees regarding the INSLAW, Inc. bankruptcy, whether or not the contact involves only a request for information; and it is

FURTHER ORDERED that this Court's order dated March 11, 1987, solely respecting its provision in subparagraph (4) enjoining the United States Trustee for the District of Columbia and the Eastern District of Virginia from further participation in the INSLAW, Inc. bankruptcy, is hereby vacated; and it is

FURTHER ORDERED that the said United States Trustee shall be and hereby is restored to his statutory duties in the INSLAW, Inc. bankruptcy case for the purposes of reviewing any disclosure statement issued in connection with a plan of arrangement proposed by the Debtor; reviewing the Debtor's monthly reports; reviewing applications to retain the services of professionals and for professional fees; and monitoring the activities of the unsecured creditors committee; and it is

FURTHER ORDERED that INSLAW, Inc.'s request for an order prohibiting the United States Department of Justice from filing a proof of claim in the INSLAW, Inc. bankruptcy be and hereby is denied at this time, without prejudice to INSLAW, Inc.'s right to object to or request equitable subordination of any such claim that the United States Department of Justice may hereafter file or otherwise assert; and it is

FURTHER ORDERED that INSLAW, Inc.'s request that the Court extend an invitation to the Attorney General to designate an appropriate official outside the United States Department of Justice to review the disputes between INSLAW, Inc. and the Department of Justice and to give the Attorney General independent advice with respect thereto is granted; and it is

FURTHER ORDERED that INSLAW, Inc.'s request for an award of punitive damages under the provisions of 11 U.S.C. § 362(h) is taken under advisement and that INSLAW, Inc. shall file and serve by August 15, 1987, a memorandum of law addressing whether punitive damages may be awarded against the United States or the United States Department of Justice and, if so, what amount would be appropriate under the circumstances found here by the Court, and the respondents may file and serve any opposing memorandum by September 4, 1987; and it is

FURTHER ORDERED that the Court, in the alternative, finds (in the event it should be determined, contrary to this Court's holding, that relief under § 362(h) is not available) the United States and the United States Department of Justice in contempt of court for violation of the automatic stay

and imposes identical sanctions under 11 U.S.C. § 105(a), subject to *de novo* review under Rule 603 of the Local Rules of the United States District Court for the District of Columbia; and it is

FURTHER ORDERED that counsel for INSLAW, Inc. shall within thirty days of the date of this order submit to the Court an application itemizing the attorney's fees and expenses incurred as a result of respondents' wrongful conduct and in the course of prosecuting its motion herein, and that counsel for respondents shall submit any opposition to the amount of such fees and expenses sought within thirty days after the filing of INSLAW, Inc.'s application; and it is

FURTHER ORDERED that this order shall not become final until the Court rules on the punitive damages issue and establishes the amount of the award for attorney's fees and expenses.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Pursuant to this Court's Order entered July 20, 1987, granting aspects of Debtor INSLAW, Inc.'s motion for court assistance to obtain independent handling and for other relief, the Court issues the following findings of fact and conclusions of law. All the facts hereinafter found have been established by at least clear and convincing, and in some instances by overwhelming, evidence.

### A. FINDINGS OF FACT

1. On March 16, 1982 INSLAW, Inc. ("INSLAW") and the United States Department of Justice ("DOJ") entered into a three-year contract for the implementation and installation in various United States Attorney's Offices of an enhanced version of the Prosecutor's Management Information System ("PROMIS"), a computerized case management and tracking system. The contract was overseen within the DOJ by the Executive Office for United States Attorneys ("EOUSA"). C. Madison Brewer of EOUSA was director of the PROMIS implementation project. He was assisted by his deputy Jack S. Rugh. Brewer had

formerly been employed as general counsel of INSLAW's predecessor between 1974 and 1976.

2. During the course of the PROMIS contract, a number of disputes developed between INSLAW and DOJ. While the disputes were pending, and prior to the conclusion of the contract, INSLAW filed a petition under Chapter 11 of the Bankruptcy Code on February 7, 1985.

3. Sometime between February 7 and February 20, 1985, Brewer discussed the INSLAW Chapter 11 bankruptcy case with Thomas J. Stanton, Director of the Executive Office of United States Trustee ("EOUST"). At the time of Brewer's discussion with Stanton, EOUSA and DOJ believed that they had an interest in seeing that INSLAW was liquidated in order to weaken or eliminate INSLAW's ability to press its contract disputes with DOJ. As a result of the discussion, Stanton made a commitment to Brewer that he would undertake to cause the conversion of INSLAW's Chapter 11 case to a Chapter 7 liquidation case.

4. Stanton made this commitment because he wanted to curry favor with the EOUSA and with higher DOJ officials in order to win the support of these higher officials for anticipated legislation that was to make permanent the then temporary United States Trustees program which he headed.

5. Acting on his commitment to Brewer, Stanton contacted William C. White, the local United States Trustee whose office had jurisdiction over the INSLAW bankruptcy, and pressured him to convert the case to a Chapter 7 liquidation. When White resisted, Stanton sought to have the office of Cornelius Blackshear, then the United States Trustee for the Southern District of New York, detail Blackshear's assistant trustee, Harry Jones, to EOUST, Washington, D.C., where Jones would be assigned to accomplish the conversion. Blackshear refused to permit this.

6. Thereafter, Stanton retaliated against White for his resistance and imposed administrative retribution on White's office by refusing to approve additional staff during a period in which the office experienced a substantial increase of complex cases in its caseload.

7. In July 1985, White was concerned that Stanton might still seek to convert or otherwise interfere with INSLAW's Chapter 11 bankruptcy, either by bringing Jones down from New York or by some other means. White requested that this Court supplement a confidentiality order proposed by INSLAW's counsel by adding language which explicitly prohibited White from disseminating any confidential information about INSLAW to anyone associated with DOJ or EOUST. The Court incorporated the restrictive language in its July 11, 1985, confidentiality order. The purpose of White's request was to "protect" himself, his office and Jones, *i.e.,* to assure that even if Stanton succeeded in obtaining Jones' assignment to EOUST to work on the INSLAW case, Jones would be unable, under the terms of the July 11, 1985 Order, to obtain information necessary to seek conversion or otherwise interfere with INSLAW's Chapter 11 case, and White and his office would no longer be subject to Stanton's pressure.

8. The fact of Stanton's commitment to Brewer to seek INSLAW's liquidation was relayed by Brewer to Rugh on or before February 20, 1985. Brewer told Rugh that Stanton had said the INSLAW bankruptcy would be converted to a Chapter 7 liquidation within 30 to 60 days. On February 20, 1985, acting on this information, Rugh telephoned Peter Videnieks, the Contract Officer on the PROMIS contract, and told him that Brewer had talked to Stanton and that there was "no way" the INSLAW bankruptcy would continue as a Chapter 11 case and that INSLAW probably would be liquidated within 30 to 60 days. Rugh told Videnieks that in view of the impending liquidation, DOJ would need to obtain a new site for the Government computer then on INSLAW's premises in Lanham, Maryland.

9. On or about February 21, 1985, Rugh telephoned Gregory McKain, a senior INSLAW software programmer who had worked on the PROMIS contract since its

inception, and told him that EOUSA had found out from the "trustees" that IN-SLAW could not make it in Chapter 11 and that the company would probably go into Chapter 7 in 30 to 60 days. Rugh then discussed with McKain the possibility of working for DOJ on the remainder of the PROMIS project under a six-month sole source contract, assuming INSLAW did go out of business.

10. As a proximate result of Rugh's call to McKain, INSLAW's executives had to spend time calming McKain and overcoming his concern that he would be unemployed within 30 to 60 days, since he had earlier been led to believe by INSLAW and its counsel that the Chapter 11 process would likely extend for months, if not years, during which time INSLAW would be able to continue operating its business. Also, INSLAW's executives had to spend time assuring that other employees did not become similarly alarmed. Finally, IN-SLAW had to incur legal fees and expenses attributable to efforts by its counsel to investigate and dispute Rugh's claim.

11. Good employee morale of a software applications company like INSLAW is a valuable asset of such a company. Good employee morale is also essential to IN-SLAW's submitting a feasible Chapter 11 Plan of Reorganization because of the services to be rendered by its employees to its customers, both during the Chapter 11 and after confirmation.

12. At all times relevant, there was no factual or legal basis upon which conversion of INSLAW's Chapter 11 case could lawfully have been sought, and Stanton knew that this was so.

13. At all times relevant, Stanton, Brewer, and Rugh were employees of DOJ acting within the scope of their employment.

14. The acts of Stanton, Brewer and Rugh that are described above were done in bad faith, vexatiously, in wanton disregard of the law and the facts, and for oppressive reasons—namely, to drive IN-SLAW out of business and into a Chapter 7 liquidation bankruptcy.

## B. CONCLUSIONS OF LAW

1. Under the provisions of 11 U.S.C. § 362(a), the filing by INSLAW of its petition under Chapter 11 of the Bankruptcy Code operated as a stay, prohibiting, *inter alia*, "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3).

2. The legislative history of section 362(a) makes clear the nature and purpose of the automatic stay provision:

> The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy. S.Rep. No. 95–989 (1978), pp. 54–55, U.S.Code Cong. & Admin.News 1978, p. 5787.

3. Stanton's actions (i) in pressuring United States Trustee William C. White to convert the INSLAW case, (ii) in seeking to obtain the transfer of Assistant Trustee Harry Jones from New York to EOUST for that purpose, and (iii) in retaliating against White by withholding staff support, (iv) when Stanton knew there was no factual or legal basis upon which liquidation could be sought, and (v) when the effect which DOJ intended to achieve by such a conversion was to weaken or eliminate INSLAW's ability to press its contract disputes with DOJ, constitute "act[s] to obtain possession of" INSLAW's property in violation of section 362(a)(3).

4. Rugh's actions on or about February 21, 1985, of telling INSLAW employee Gregory McKain that the "trustees" had said INSLAW would probably be out of business in 30 to 60 days and suggesting that McKain consider employment with DOJ, taken as a result of Stanton's commitment to Brewer, constitute "act[s] to obtain possession of" INSLAW's property in violation of section 362(a)(3) by destroying employee morale and interfering with IN-

SLAW's rights in its employer/employee relationship with Gregory McKain. Both the employee morale and the employee/employer relationship with McKain constitute "property of the estate" of INSLAW under 11 U.S.C. § 541(a)(1).

5. The foregoing violations of section 362(a)(3) by DOJ, acting through its employees Stanton, Brewer, and Rugh, were "willful" within the meaning of 11 U.S.C. § 362(h).

■ 6. INSLAW is an "individual" within the meaning of section 362(h). *Budget Service Co. v. Better Homes of Va.*, 804 F.2d 289 (4th Cir.1986).

7. INSLAW was injured by the foregoing willful violations of section 362(a)(3), and under section 362 in general and especially section 362(h) is entitled to judgment against the United States of America and DOJ for its actual damages resulting therefrom, including its costs and attorney's fees.

8. In the alternative, on the basis of the foregoing facts, the Court finds the United States of America and DOJ in contempt of court for violating the automatic stay and imposes sanctions identical to those imposed in paragraph 7.

■ 9. As a further alternative ground for the imposition of attorney's fees, the Court concludes on the basis of the foregoing findings of fact that the United States of America and DOJ acted in bad faith, vexatiously, wantonly, and for oppressive reasons. Accordingly, the United States of America and DOJ are liable for INSLAW's reasonable attorney's fees. 28 U.S.C. § 2412(b); see *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 258–59, 95 S.Ct. 1612, 1622, 44 L.Ed.2d 141 (1975).

■ 10. In light of the facts found herein, the Court concludes that the actions of DOJ threaten to irreparably harm the Court's proper administration of the bankruptcy laws and the Court therefore concludes that the injunctive relief granted in

its Order entered July 20, 1987, is necessary and appropriate to carry out the provisions of the bankruptcy laws within the meaning of 11 U.S.C. § 105(a).

### FINAL JUDGMENT ORDER

Upon consideration of the record of this case, and this Court having today issued findings of fact and conclusions of law pursuant to this Court's Order entered July 20, 1987 granting aspects of Debtor INSLAW's motion for court assistance to obtain independent handling and for other relief, it is hereby

ORDERED that this Court's above-described July 20, 1987 Order is hereby modified by striking therefrom the decretal paragraph at page 486 of that Order and inserting in lieu thereof the following:

[IT IS] FURTHER ORDERED that INSLAW's request for an award of punitive damages under 11 U.S.C. § 362(h) shall be and hereby is reserved for determination contemporaneously with and as part of the determination to be made at a later stage of *INSLAW, Inc. v. United States et al.*, 83 B.R. 89 (D.Col.1988) No. A86–0069, based on the totality of circumstances, for the reasons discussed in paragraph 5 of this Court's Final Judgment Order issued today in that adversary proceeding.

AND IT IS FURTHER ORDERED that the July 20, 1987 Order is hereby further modified by striking therefrom the final decretal paragraph on page 486, and substituting in lieu thereof the following:

[IT IS] FURTHER ORDERED that the amount of the award for attorney's fees and expenses is hereby fixed at $228,415.35, consisting of the following:

| TO: | FEES | EXPENSES |
| --- | --- | --- |
| O'Neill and Lysaght | $ 36,640.00 | $ 2,332.54 |
| Milbank, Tweed, Hadley & McCloy | $ 13,287.50 [1] | $–0– |
| McDermott, Will & Emery | $ 71,781.25 | $ 930.88 [2] |

1. $620.00 deducted: Gesner appearance as a witness.

2. $156.50 deducted: discrepancy as to witness fee cost.

| TO:<br>Kellogg, Williams & Lyons | FEES<br>$ 56,462.50 | EXPENSES<br>$ 457.09 |
|---|---|---|
| Docter, Docter, & Salus, P.C. | $ 39,248.00 [3] | $ 6,001.34 |
| INSLAW, Inc. | $ -0- | $ 1,274.25 |
| Total Fees and Expenses: | $217,419.25 | $10,996.10 |

In all other respects, this Court's above-described July 20, 1987 Order is hereby ratified and confirmed. Pursuant to Fed. R.Civ.P. 54(b) and Bankruptcy Rule 7054, this Court expressly determines that there is no just reason for delay in the entry of this judgment and expressly directs that this judgment with regard to the claims adjudicated herein be entered as a final judgment.

## FINAL JUDGMENT ORDER

### (Counts I, II and III)

Those claims for relief as set forth in Counts I, II and III of the Complaint herein, as modified by this Court's Order dated July 20, 1987, having come before this Court for trial during the period July 20 through August 5, 1987; the parties hereto having submitted extensive evidence, legal briefs, argument and proposed findings of fact and conclusions of law; and this Court having very carefully taken into consideration all of these submissions and having also thoroughly weighed all of the evidence, including the credibility of the many witnesses who testified at trial, and this Court having made findings of fact that have been established by clear and convincing evidence, and being otherwise fully advised in the premises, and based on this Court's conclusions of law and the entire record of this proceeding,

IT IS HEREBY ORDERED, ADJUDGED, DECLARED and DECREED:

1. Final Declaratory Judgment be and is hereby entered in favor of Plaintiff INSLAW, Incorporated ("INSLAW") and against Defendants United States of America and United States Department of Justice (hereinafter collectively referred to as "DOJ"), that:

(a) INSLAW solely and alone owns all rights to the privately-financed proprietary enhancements to PROMIS, which proprietary enhancements are described and identified in this Court's Findings of Fact filed simultaneously herewith;

(b) INSLAW has the sole and exclusive right to sell, lease or otherwise market or make available INSLAW's privately funded proprietary enhancements;

(c) The property interest of DOJ at all times consisted solely of the right to utilize the non-proprietary version of PROMIS, consisting of the pilot project version of PROMIS plus the five specific enhancements developed for and under contract with the DOJ's Bureau of Justice Statistics;

(d) DOJ converted INSLAW's privately-financed proprietary enhancements by trickery, fraud and deceit, and DOJ has unlawfully exercised dominion and control over those proprietary enhancements in violation of the automatic stay in bankruptcy, 11 U.S.C. § 362;

(e) Various representatives of DOJ, including particularly C. Madison Brewer, Peter Videnieks and Jack Stanley Rugh, among others, were negatively biased against INSLAW, and acted with respect to INSLAW and the property of its estate in a manner evidencing a complete lack of impartiality and independence. DOJ's failure to cure, during the post-bankruptcy period, the continuing negative effects of this bias and lack of impartiality on the part of DOJ officials toward INSLAW, and the consequential impact thereof on the property of INSLAW's estate, constitutes a further violation of the automatic stay of 11 U.S.C. § 362(a).

2. For the reasons underlying the declaratory judgments entered herein and as set forth fully in the accompanying findings of fact and conclusions of law, and upon a determination by the Court that irreparable harm to INSLAW will result from the continued violation by DOJ of the automatic stay in derogation of INSLAW's·

**3.** $375.00 deducted: Salus appearance as a witness.

trade secret rights in enhanced PROMIS, and upon consideration of the balance of the harms to the parties and the relevant public interests, an injunction should be and is hereby issued against DOJ, enjoining it:

(a) from any further expansion of the use of INSLAW's proprietary enhancements in any office in which DOJ does not currently utilize the enhanced version of PROMIS; and

(b) from disclosing, disseminating, releasing or making available INSLAW's privately-financed proprietary enhancements, including all of its supporting materials and documentation, manuals, tapes, disks, diskettes, descriptions and work materials of any kind whatsoever, to anyone or any person outside of the offices of DOJ currently using the enhanced version of PROMIS.

3. To preclude any possibility that the biased, prejudicial and utterly hostile conduct of certain officials of DOJ that has heretofore tainted INSLAW's dealings with the Government will continue in any manner, which conduct is set forth fully in the accompanying findings of fact, and in light of DOJ's repeated and willful failure to investigate and recuse those negatively biased individuals, in derogation of the explicit and unambiguous requirement that they do so pursuant to 5 C.F.R. § 735, 28 C.F.R. § 45.735(1)(b) and 28 C.F.R. § 45.735–26, and upon a determination that irreparable harm to INSLAW will result from the continued adverse effects of bias and lack of impartiality of those certain DOJ officials, and upon consideration of the balance of harms to the parties and the relevant public interests, an injunction should be and is hereby issued against DOJ, enjoining it from permitting any further participation, at any level or in any capacity, other than as evidentiary witnesses, of C. Madison Brewer, III, Peter Videnieks and Jack Stanley Rugh in respect to any actions by DOJ concerning INSLAW, William Hamilton or PROMIS, including but not limited to:

(a) efforts to negotiate a settlement, or otherwise being involved in decision-making or strategic aspects of the cases and proceedings now pending before this Court and before the Department of Transportation Contract Appeals Board ("DOTCAB");

(b) decisions or consideration of whether, and to what extent, DOJ will use PROMIS, including but not limited to decisions to maintain, upgrade, expand or replace PROMIS;

(c) consideration or administration by DOJ of future contracts with INSLAW; and

(d) attempts by INSLAW to market PROMIS to other governmental agencies, including but not limited to the Department of Justice and the individual United States Attorney's Offices.

4. INSLAW shall be awarded its attorneys' fees, expenses and costs incurred in prosecuting this adversary proceeding. Counsel for INSLAW shall, within 24 hours from the date of entry of this Judgment, submit to this Court an application itemizing its said attorneys' fees, expenses and costs, and counsel for DOJ shall, on or before February 1, 1988, submit any opposition to the amount of such fees, expenses and costs sought.

5. INSLAW's request for an award of punitive damages under the provisions of 11 U.S.C. § 362(h) shall be and hereby is reserved for determination at a later stage of this proceeding. Documents recently filed by INSLAW raise the possibility that DOJ or persons acting on its behalf may have (i) improperly interfered with INSLAW's relationship with customers and potential customers, and (ii) improperly interfered with the attorney-client relationship between INSLAW and its former counsel in this adversary proceeding, causing counsel to withdraw at a critical stage of the proceeding. If INSLAW can prove at a later stage of this adversary proceeding that these (or other) additional outrages in fact occurred, that may have a significant bearing on the question of the permissibility and the appropriate amount of a punitive damages award. See *Young v. City of Des Moines*, 262 N.W.2d 612, 621 (Iowa 1978), allowing punitive damages against a governmental subdivision (even

absent express statutory authorization) but noting that two other jurisdictions, New York and Vermont, "do so only under most compelling circumstances." See also *Rieser v. District of Columbia*, 563 F.2d 462, vacated, 563 F.2d 482 (1977), reinstated in relevant part *en banc*, 580 F.2d 647 (1978), referring to a possible "extraordinary circumstances" exception to the general rule denying punitive damages as against the District of Columbia.

6. Also reserved for later determination, at the trial scheduled to begin on January 27, 1988, is INSLAW's request for an injunction requiring DOJ to be bound by the terms and conditions of INSLAW's standard license agreement with respect to each of those offices in which DOJ already has implemented the privately-funded enhanced version of PROMIS, and requiring DOJ to compensate INSLAW by paying to INSLAW its standard license fee.

7. This Court shall retain jurisdiction of this cause for such other and further proceedings as may hereinafter be appropriate.

Pursuant to Fed.R.Civ.P. 54(b) and Bankruptcy Rule 7054, this Court expressly determines that there is no just reason for delay in the entry of this judgment and expressly directs that this judgment with regard to the claims adjudicated herein be entered as a final judgment.

### FINAL JUDGMENT ORDER

### (Count IV)

### (Compensatory Damages for Counts I, II and III)

### (Consequential and Exemplary Damages Reserved For Later Hearings)

This Court having made findings of fact and conclusions of law and having ordered the entry of final judgment on January 25, 1988 in favor of the plaintiff, INSLAW, Inc. ("INSLAW") on the claims for relief set forth in Counts I, II and III of the Complaint herein concerning the misappropriation and conversion by defendants United States of America and Department of Justice (collectively "DOJ") of certain proprietary software belonging solely to INSLAW, in violation and/or in contempt of the automatic stay order in bankruptcy, 11 U.S.C. § 362; the parties hereto having submitted evidence, legal briefs and argument concerning the appropriate measure and amount of compensatory damages therefor; this Court having very carefully taken into consideration all of these submissions; this Court having held a trial concerning the measure and amount of these compensatory damages from January 27, 1988 through January 29, 1988, and having also thoroughly weighed all of the evidence, including the credibility of the witnesses who testified at trial; the Court having delivered orally on February 1, 1988, in open court, its Findings of Fact and Conclusions of Law concerning the ruling of the Court on the measure and amount of compensatory damages; and being otherwise fully advised in the premises, and based upon the entire record in this proceeding,

IT IS HEREBY ORDERED, ADJUDGED, DECLARED AND DECREED:

1. Damages shall be and are hereby awarded to INSLAW and are assessed against the United States of America and the Department of Justice in the amount of $6,790,000.00 for the misappropriation, conversion, use and expansion of use of proprietary software belonging solely to INSLAW, in violation of the automatic stay and in contempt of the automatic stay entered by this Court. These damages are calculated in accordance with INSLAW's standard perpetual license fees at the time the violations of the automatic stay occurred and thereafter, as follows:

Fees for the first copy of the software at $150,000.00;

Fees for copies 2 through 44 at $120,000.00 per copy, *i.e.*, $5,160,000.00;

Fees for use of Batch Update to create 21 separate databases at $10,000.00 for each such use, *i.e.*, $210,000.00;

Fees for use of the software at 28 satellite offices at $40,000.00 per office, *i.e.*, $1,120,000.00; and,

Fees for one copy of the VAX timesharing software at $150,000.

Interest shall begin to run upon this judgment from the date of entry, in accordance with 28 U.S.C. § 2412.

2. Paragraphs 2(a) and 2(b) of the Final Judgment Order entered by the Court on January 25, 1988, on Counts I, II and III of the Complaint herein, shall be and are hereby modified solely to the extent that DOJ shall be permitted, if it so chooses, to implement in the United States Attorney's Offices for the Northern District of Ohio and the District of Puerto Rico the PROMIS software that has already been tailored for installation at those locations by IN-SLAW and DOJ, respectively, inasmuch as this Final Judgment Order includes damages based upon the conversion and misappropriation by DOJ of those two copies of the software. The January 25, 1988 Final Judgment Order is not modified by this Order in any other respect.

3. DOJ shall comply with all terms of INSLAW's standard "Program Product License Agreement," which has been received into the record of this adversary proceeding as Plaintiff's Exhibit 368, with respect to each and every copy of the PROMIS software and supporting materials and documentation, manuals, tapes, disks, diskettes, descriptions and work materials of any kind whatsoever, in the possession of DOJ that has been found by this Court to contain proprietary trade secret software and other proprietary information belonging solely to INSLAW.

4. INSLAW shall be and is hereby awarded its attorneys' fees, expenses and costs incurred in prosecuting this adversary proceeding, in accordance with 11 U.S.C. § 362(h). As an alternative ground for imposition of attorneys' fees, the Court concludes that the United States of America and DOJ acted in bad faith, vexatiously, wantonly and for oppressive reasons with respect to those matters adjudicated in Counts I, II and III of the Complaint and that, accordingly, the United States of America and DOJ are liable for INSLAW's reasonable attorneys' fees, expenses and costs. 28 U.S.C. § 2412(b); *see Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 258–59, 95 S.Ct. 1612, 1622, 44 L.Ed.2d 141 (1975).

Pursuant to Bankruptcy Rule 7052 and Fed.R.Civ.P. 52(a), the Court hereby expressly adopts its oral ruling delivered on February 1, 1988, in open court, as its Findings of Fact and Conclusions of Law with respect to the measure and amount of compensatory damages from the conversion and misappropriation by DOJ of IN-SLAW's proprietary trade secret software and information in violation of the automatic stay.

Pursuant to Fed.R.Civ.P. 54(b) and Bankruptcy Rule 7054, this Court expressly determines that there is no just reason for delay in the entry of this judgment and expressly directs that this judgment with regard to the matters adjudicated herein be entered as a final judgment.

### FINAL JUDGMENT ORDER

#### (ATTORNEYS' FEES)

Upon consideration of the record of this case, this Court having issued Findings of Fact and Conclusions of Law and having ordered entry of a Final Judgment on January 25, 1988 in favor of Plaintiff INSLAW, Inc. on the claims for relief set forth in Counts I, II and III of the Complaint; having entered orally from the bench Findings of Fact and Conclusions of Law on Count IV of the Complaint on February 1, 1988; having entered a Final Judgment for IN-SLAW on February 2, 1988 for compensatory damages in the amount of $6,790,000 for the misappropriation, conversion and use of proprietary software belonging solely to INSLAW in violation of the automatic stay, and in the alternative, in contempt of this Court;

And this Court having in the Aforesaid Orders of January 26, 1988 and February 2, 1988 awarded attorneys' fees, expenses and costs in regard to prosecuting of this adversary proceeding in accordance with 11 U.S.C. § 362(h), and in the alternative having awarded attorneys' fees pursuant to 28 U.S.C. § 2412(b) upon a finding that the United States of America and the Department of Justice acted in bad faith, vexatiously, wantonly and for oppressive reasons with respect to those matters adjudi-

cated in Counts I, II and III of the Complaint and that accordingly the United States of America and the Department of Justice are liable for INSLAW's reasonable attorneys' fees, expenses and costs;

IT IS HEREBY ORDERED that the amount of the award for attorneys' fees and expenses is hereby fixed at $957,634.51 consisting of the following:

| TO: | FEES | EXPENSES |
|---|---|---|
| O'Neill and Lysaght (un-contested) | $ 3,200.00 | $ 359.25 |
| Milbank, Tweed, Hadley & McCloy | $ 16,348.75 | $–0– |
| (objections overruled after hearing) McDermott, Will & Emery | $685,568.75 | $100,570.23 [1] |
| (uncontested as to reduced amount) Kellogg, Williams & Lyons | $ 34,987.50 | $ 327.55 |
| (uncontested) Docter, Docter, & Salus, P.C. | $114,397.48 [2] | $ 1,875.00 [2] |
| Total Fees and Expenses [3] | $854,502.48 | $103,132.03 |

In all other respects the Orders of this Court dated January 25, 1988 and February 2, 1988 are hereby ratified and confirmed. Pursuant to Fed.R.Civ.P. 54(b) and Bankruptcy Rule 7054, this Court expressly determines that there is no just reason for delay in the entry of this judgment and expressly directs that this judgment with regard to the claims adjudicated herein be entered as a final judgment.

---

1. Without prejudice to reconsideration of the denial of $53,184.99 in expert witness fees on motion therefor filed within 30 days after entry of this Order.

2. The Court has reduced the requested fees and expenses by one-fourth, in accordance with *A.S.H. v. C.A.B.*, 724 F.2d 211, 220 (D.C.Cir.1984) ("In most cases, therefore, deficiencies in documentation are cause for reduction rather than outright denial of fees"). The Court grants this firm's request to file its application one day late. Mindful that the deficiencies in documentation were most likely caused by the extremely short

notice adverted to in the application, the Court will allow this firm to request reconsideration of this partial disallowance of fees and expenses at any time up through the end of the trial of Phase 3 in this adversary proceeding.

3. The Court will not at this time make any award against defendants for the fees of counsel to the Unsecured Creditors' Committee. This determination is subject to reconsideration at the time of the Phase 3 trial in Adversary Proceeding No. 86–0069, *Inslaw, Inc. v. United States et al.*, 83 B.R. 89 (D.Colo.1988).