**INSLAW, INC., et al., Plaintiffs,**

**v.**

**The UNITED STATES, Defendant.**

**Cong. Ref. No. 95–338X.**

United States Court of Federal Claims.

March 1, 1996.

---

C. Neal Pope, Atlanta, GA, for plaintiffs. James L. Malone, III and Charles R. Work, McDermott, Will & Emery; Philip L. Kellogg and James L. Lyons, Kellogg, Williams & Lyons; Michael L. McGlamry and William U. Norwood, Pope, McGlamry, Kilpatrick & Morrison, Atlanta, GA; and Earle F. Lasseter, Pope, McGlamry, Kilpatrick & Morrison, Columbus, GA, of counsel.

Allen L. Lear, Washington, DC, with whom was Assistant Attorney General Frank W. Hunger, for defendant. Sandra P. Spooner, Cathy J. Burdette, Anthony J. Ciccone, Beth E. Cook, and William A. Rivera, of counsel.

## ORDER

MILLER, Judge.

This congressional reference is before the court on defendant's motion *in limine*. Defendant seeks to exclude any claims that concern the version of PROMIS computer software (the "Lands contract") provided by INSLAW, Inc. ("INSLAW" or "plaintiffs"), to the Land and Natural Resources Division ("Lands Division") (now the Environment and Natural Resources Division) of the Department of Justice ("DOJ"), asserting that these claims are beyond the scope of the congressional reference.

## FACTS

The essential facts of this case have been reviewed and summarized several times during the ten-year course of litigation between the parties. *See INSLAW, Inc. v. United States (In re INSLAW, Inc.)*, 83 B.R. 89 (Bankr.D.D.C.1988) (describing enhancements made to PROMIS computer software and recounting details of the relationship between INSLAW and DOJ); *In re INSLAW, Inc.*, 88 B.R. 484 (Bankr.D.D.C.1988) (summarizing facts and holding that INSLAW was entitled to relief for damages caused by DOJ); *United States v. INSLAW, Inc.*, 113 B.R. 802 (D.D.C.1989) (providing description of contractual relationship between parties and affirming bankruptcy court's award to INSLAW), *rev'd.*, 932 F.2d 1467 (D.C.Cir. 1991) (reversing lower court's ruling on basis that bankruptcy court lacked subject matter jurisdiction), *cert. denied,* 502 U.S. 1048, 112 S.Ct. 913, 116 L.Ed.2d 813 (1992).

In response to numerous disputes with DOJ, INSLAW[1] brought claims in both the United States Bankruptcy Court for the District of Columbia and the Department of Transportation Contract Appeals Board. INSLAW eventually withdrew its claims from the appeals board, *see Appeals of INSLAW, Inc.*, Contract JVUSA–82–C–0074, Docket Nos. 1609, 1775, 1828 (DOT Nov. 9, 1992), and obtained an automatic stay from the bankruptcy court, pursuant to 11 U.S.C. § 362(a) (1994), protecting its proprietary interests in its enhancements. *INSLAW, Inc. v. United States (In re INSLAW, Inc.)*, 83 B.R. 89 (Bankr.D.D.C.1988), *aff'd.*, 113 B.R. 802 (D.D.C.1989), *vacated*, 932 F.2d 1467 (D.C.Cir.1991), *cert. denied*, 502 U.S. 1048, 112 S.Ct. 913, 116 L.Ed.2d 813 (1992). At the conclusion of the bankruptcy proceedings, the bankruptcy judge found that INSLAW had proprietary interests in its software enhancements. *Id.* at 159–62. He also ruled that DOJ officials knowingly misappropriated these enhancements, thus violating the automatic stay, *id.* at 166, awarding INSLAW compensatory damages, attorneys' fees, and expenses. *In re INSLAW, Inc.*, 88 B.R. 484 (Bankr.D.D.C.1988), *aff'd.*, 113 B.R. 802 (D.D.C.1989), *vacated*, 932 F.2d 1467 (D.C.Cir.1991), *cert. denied*, 502 U.S. 1048, 112 S.Ct. 913, 116 L.Ed.2d 813 (1992).

On appeal the district court affirmed the bankruptcy judge's decision. *United States v. INSLAW, Inc.*, 113 B.R. 802 (D.D.C.1989). However, the appellate court vacated the lower court's decision and dismissed INSLAW's complaint against DOJ, ruling that the bankruptcy court lacked jurisdiction to adjudicate INSLAW's claims. *United States v. INSLAW, Inc.*, 932 F.2d 1467, 1475 (D.C.Cir.1991), *cert. denied*, 502 U.S. 1048, 112 S.Ct. 913, 116 L.Ed.2d 813 (1992). Investigations by both houses of Congress and DOJ followed. Noting the "[c]onsiderable controversy [that] has surrounded the merits of INSLAW's claim[s]," 141 Cong.Rec. S.5910 (daily ed. May 1, 1995) (statement of Sen. Hatch), the Senate referred the INSLAW matter to the Chief Judge of the United States Court of Federal Claims and directed him to proceed pursuant to 28 U.S.C. §§ 1492, 2509 (1994). S.Res. 114, 104th Cong., 1st Sess. (1995). The bill, offered to the Senate for consideration states:

> The Secretary of the Treasury shall pay ... the sum due, if any, jointly to Inslaw, Inc.... and William A. Hamilton and Nancy Burke Hamilton for damages incurred arising from claims relating to the furnishing of computer software and services to the United States Department of Justice.
>
> The payment ... shall constitute full settlement of all legal and equitable claims by Inslaw, Inc., and William A. Hamilton and Nancy Burke Hamilton against the United States, or any agency, official, officer, employee, or agent thereof.
>
> Nothing in this Act shall be construed as an inference of liability on the part of the United States.

S.740, 104th Cong., 1st Sess. (1995). The resolution passed by the Senate provides:

> [T]he bill S.740 ... is referred to the chief judge of the United States Court of Federal Claims. The chief judge shall proceed with the same in accordance with the provisions of sections 1492 and 2509 of title 28, United States Code, and report thereon to the Senate, at the earliest practicable date, giving such findings of fact and conclusions thereon as shall be sufficient to inform the Congress of the nature and character of the demand as a claim, legal or equitable, against the United States or a gratuity and the amount, if any, legally or equitably due to the claimants from the United States.

S.Res. 114, 104th Cong., 1st Sess. (1995). Thereafter, plaintiffs filed their complaint in this court, which has been amended.

## DISCUSSION

■ The basic purpose of a motion *in limine* is "to prevent a party before trial from encumbering the record with irrelevant, immaterial or cumulative matters. Such a motion enables a court to rule in advance on the admissibility of documentary or testimonial evidence and thus expedite and render

---

1. Plaintiffs in this congressional reference include the owners of INSLAW, although prior proceedings were brought by INSLAW alone.

The term "INSLAW" herein includes the other named plaintiffs.

efficient a subsequent trial." *Baskett v. United States*, 2 Cl.Ct. 356, 367–68 (1983), *aff'd*, 790 F.2d 93 (Fed.Cir.) (Table), *cert. denied*, 478 U.S. 1006, 106 S.Ct. 3300, 92 L.Ed.2d 714 (1986). In this manner the court filters out irrelevant evidence and performs its function of "simplifying issues for trial." *Id.* at 359. Nevertheless, granting a motion *in limine* should not "preclude plaintiffs from receiving a fair trial." *Id.* at 368 (citing *Zenith Radio Corp. v. Matsushita Elec. Indus. Co., Ltd.*, 505 F.Supp. 1125, 1140–42 (E.D.Pa.1980), *aff'd. in part, rev'd. in part sub nom. In re Japanese Elec. Prod. Antitrust Litig.*, 723 F.2d 238 (3d Cir.1983), *rev'd. sub nom. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

In its motion *in limine*, defendant contends that "any claims plaintiffs may have regarding the version of PROMIS provided by INSLAW to the ... [Lands Division] are beyond the scope of this congressional reference ... the Court therefore lacks subject matter jurisdiction to hear such claims." Def's Br. filed Dec. 29, 1995, at 1. Defendant argues that the PROMIS software provided to the Justice Management Division (the "JMD") constitutes the only contractual issue covered by the congressional reference.

Defendant relies upon language in the legislative history of the congressional reference to argue that Congress did not intend the court to consider the Lands contract. Defendant notes that Senator Hatch used singular language, describing "a" software program at issue. According to defendant, the singular is important because it reveals that Senator Hatch only focused on INSLAW's 1986 bankruptcy proceeding against DOJ. In that proceeding INSLAW's focus was the JMD contract and not the PROMIS software delivered to the Lands Division. *See In re INSLAW, Inc.*, 83 B.R. 89 (Bankr.D.D.C. 1988). Similarly, defendant notes that the use of the singular in Senator Hatch's statement "[r]eferring this matter to the Court of Claims is thus the best way to settle this matter once and for all" demonstrates that the congressional reference was intended to address only the JMD contract, not the

Lands contract. 141 Cong.Rec. S.5910 (daily ed. May 1, 1995) (statement of Sen. Hatch).

In construing statutes, courts must "begin with the language of the statute." *Norfolk & W. Ry. v. American Train Dispatchers' Ass'n*, 499 U.S. 117, 128, 111 S.Ct. 1156, 1163, 113 L.Ed.2d 95 (1991). "If the intent of Congress is clear, that is the end of the matter; for the court ... must give effect to the unambiguously expressed intent of Congress." *Id.* (quoting *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984)). In the bill and accompanying resolution to the court, Congress broadly referred this matter to determine the amount due to INSLAW "for damages incurred arising from claims relating to the furnishing of computer software and services to the United States Department of Justice." S.740, 104th Cong., 1st Sess. (1995). The broad wording in the bill demonstrates Congress' intent to refer all of INSLAW's claims arising from the alleged misappropriation of computer software. Such a broad and unambiguous grant of jurisdiction to the court renders analysis of the legislative history inappropriate.

■ Assuming, *arguendo*, that the resolution's language is not clear or unambiguous, the legislative history nevertheless supports inclusion of the Lands contract in this congressional reference. "All statutes must be construed in the light of their purpose." *Haggar Co. v. Helvering*, 308 U.S. 389, 394, 60 S.Ct. 337, 339, 84 L.Ed. 340 (1940). If the statute is not completely clear, the court should "look not only to the particular statutory language, but to the design of the statute as a whole and to its object and policy." *Crandon v. United States*, 494 U.S. 152, 158, 110 S.Ct. 997, 1001, 108 L.Ed.2d 132 (1990). In doing so, the court should provide meaning to words depending on their context. *Shell Oil Co. v. Iowa Dep't. of Revenue*, 488 U.S. 19, 25, 109 S.Ct. 278, 281, 102 L.Ed.2d 186 (1988). Consequently, the legislative history of the congressional reference must be evaluated with an eye on its context and consistent with the overall objective of the legislation.

In *Mizokami v. United States*, 188 Ct.Cl. 736, 414 F.2d 1375 (1969) (per curiam), the Court of Claims, in determining whether to dismiss a claim brought under a special jurisdictional act similar to a congressional reference, held that to dismiss the claim "would be to presume that Congress passed the bill in question merely to send plaintiffs to this forum for a ... concomitant dismissal of their petition." *Id.* at 743, 414 F.2d at 1379; *see also Rawlins v. United States*, 225 Ct.Cl. 367, 371, 646 F.2d 459, 462 (1980) (holding that to interpret congressional reference to abrogate cause of action stated therein would render law "dead letter"). In reaching its decision, the court relied upon the legislative history in refusing to dismiss plaintiffs' claims on this ground, noting that no other options for compensation were available to plaintiffs. *Mizokami*, 188 Ct.Cl. at 743–44, 414 F.2d at 1379.

In this case, as in *Mizokami*, the legislative history and INSLAW's exhaustion of its remedies support inclusion of the Lands contract within the scope of the congressional reference. Defendant's restrictive interpretation of the language used by a senator contradicts the overall objective of this congressional reference to resolve "this matter once and for all." 141 Cong.Rec. S.5910 (daily ed. May 1, 1995) (statement of Sen. Hatch). Senator Hatch articulated the purpose of the bill: "to inform the Congress of the amount, if any, due to INSLAW for furnishing its computer services to the Department of Justice." *Id.* at S.5911. Adhering to defendant's interpretation of the legislative history by restricting this congressional reference only to those claims arising from the JMD contract might serve to perpetuate the disputes between INSLAW and the Government and would thwart the original purpose of the congressional reference.

■ Generally, "[i]t is the duty of this court not to attempt to overstep the limit thus assigned to its powers." *Ford v. United States*, 19 Ct.Cl. 519, 524 (1884), *cert. denied*, 116 U.S. 213, 6 S.Ct. 360, 29 L.Ed. 608 (1886). The court "cannot entertain a reference that conflicts with the jurisdiction conferred by the statute establishing jurisdiction in this court to hear a reference." *Lance Indus., Inc. v. United States*, 3 Cl.Ct. 762, 777 (1983) (citation omitted). Defendant argues that the court does not have jurisdiction to hear the claim against the Lands Division, relying on *Hulsey v. United States*, 6 Cl.Ct. 593 (1984) (congressional reference to determine whether plaintiff should be compensated for injuries caused by swine flu vaccine). However, this case is distinguishable because it involved a claim clearly outside the scope of the congressional reference. In *Hulsey* the Senate excluded Guillian–Barre syndrome and focused upon polymyositis as a cause of plaintiff's illness. However, a medical report forwarded to defendant indicated that vasculitis or possibly Guillian–Barre Syndrome, not polymyositis, constituted the cause of plaintiff's illness. Therefore, plaintiff's claim was dismissed for lack of jurisdiction because these diseases were not included in the scope of the congressional reference.

■ Unlike *Hulsey*, this congressional reference does not specify the cause of INSLAW's claims against DOJ. It merely authorizes payment to INSLAW "for damages incurred arising from claims relating to the furnishing of computer software and services to [DOJ]." S.740, 104th Cong., 1st Sess. (1995). The legislative history describes INSLAW's claims as follows: "Inslaw sold the Department of Justice a software program it alleges was improperly shared with other Federal agencies." 141 Cong.Rec. S.5910 (daily ed. May 1, 1995) (statement of Sen. Hatch). This is a broad description. No statement or other indication is present that claims against the Lands Division are outside the scope of the congressional reference. Defendant's reliance upon *Rawlins v. United States*, 225 Ct.Cl. 367, 646 F.2d 459 (1980) (determining whether Naval officer should be compensated retroactively for lost retirement pay and active-duty pay), is similarly misplaced. In *Rawlins* plaintiff petitioned the court for back pay and a retroactive promotion. The court dismissed plaintiff's claim for retroactive promotion because it lacked the power to grant such a remedy and because the congressional reference did not authorize the Court of Claims to award a promotion.

**68**

INSLAW seeks compensation from defendant based on claims that DOJ knowingly misappropriated computer enhancements made to the PROMIS software that INSLAW exclusively owned. Unlike the references in *Hulsey* and *Rawlins,* this congressional reference is very broad. It authorizes the court "to hear, determine, and render conclusions that are sufficient to inform the Congress of the amount ... due to Inslaw for furnishing its computer services to the Department of Justice." 141 Cong.Rec. S.5911 (daily ed. May 1, 1995) (statement of Sen. Hatch). INSLAW makes no claim outside the expansive scope of the congressional reference.

Finally, defendant argues that INSLAW's failure to mention specifically the Lands contract in the original and amended complaints demonstrates that plaintiffs did not intend to include allegations regarding the Lands contract in this reference. Defendant points to the fact that INSLAW's original complaint makes specific references to the 1982 JMD Contract, while only vaguely alluding to the 1979 Lands contract. Defendant contends that permitting INSLAW to insert these belated allegations will needlessly burden the discovery process and confuse the issues in this congressional reference.

INSLAW's complaint,[2] however, is broader than defendant would allow. INSLAW asserts that "[d]efendant through a series of contracts and through a course of dealings, had a confidential relationship with Plaintiffs." Plfs' Compl. filed Aug. 4, 1995, ¶ 34. The seven claims in the amended complaint are not specifically limited to the JMD Contract. The claim against the Lands Division arises from the same set of operative facts as these other claims. In short, including the Lands Division does not unduly burden the discovery process.

### CONCLUSION

Accordingly, based on the foregoing, defendant's motion *in limine* is denied.

---

2. Plaintiffs' amended complaint does not restate   all allegations of the original.